United States District Court
Southern District of Texas
**ENTERED**
May 14, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM G. BIBBUS, JR., § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> § <br> SKYWEST AIRLINES, INC., § <br> § <br> *Defendant.* § | CIVIL ACTION NO. 4:21-cv-3324 |

## ORDER

Pending before the Court is Defendant SkyWest Airlines, Inc.'s ("SkyWest" or "Defendant") Motion for Summary Judgment. (Doc. No. 19). Plaintiff William G. Bibbus, Jr. ("Plaintiff" or "Bibbus") filed a Response (Doc. No. 25), and SkyWest filed a Reply (Doc. No. 29). Upon reviewing the briefing, summary judgment evidence, and applicable law, the Court hereby GRANTS SkyWest's motion. (Doc. No. 19).

### I.   Background

This is a disability discrimination case in which Bibbus alleges that he was discriminated against by his former employer, SkyWest, an airline company. Bibbus joined SkyWest in 2015 as an airline mechanic in Tucson, Arizona. In 2019, he transferred to George Bush Intercontinental Airport ("IAH") where he was a Mechanic Level III. Bibbus primarily worked outside in the ramp area inspecting airplanes and servicing maintenance requests. In March of 2020, the COVID-19 pandemic hit. In an attempt to comply with public health guidelines at that time, SkyWest adopted practices that required all of its employees to wear face coverings. The practice was designed to reduce the spread of COVID-19 and applied to all employees,

regardless of whether they had a disability. If an employee was unable to wear a mask "due to a documented medical condition," they were instructed to "contact their manager who will then review with Employee Relations for a possible medical accommodation." (Doc. No. 25, Ex. 9 at 2). The policy also excused employees from wearing masks while as the sole occupant of a room, building, cubicle, or similar enclosure, or whose work "precludes face covering use during specific job tasks." (*Id.*)

Bibbus complied with the mask requirement for four months from March 2020 to June 2020 and did not raise any issues during this time. As the summer progressed, however, Bibbus claims that it became more difficult for him to breathe while wearing the mask. Bibbus claims that he suffers from asthma and that his asthma "is complicated by his diagnosed medical conditions of ADD, ADHD, Sleep Apnea, and allergies." (Doc. No. 25 at 10). Bibbus also contends that, at this time, his doctor "ordered him to stop wearing the mask and seek an accommodation from his employer."[1] (*Id.* at 5).

At some point in June of 2020, Bibbus alleges that he met with his supervisor, Reginald Teague, and requested an accommodation excusing him from having to wear his mask since he worked primarily outside. Bibbus' deposition testimony is vague and uncertain as to what documentation he showed Teague and on what date. (Doc. No. 25, Ex. 20 at 46:1-5) ("I couldn't tell you right now because it was years ago, but I – I had documents with me and I presented them to my employer."). Other than this statement, there is no evidence that he showed Teague any documented medical condition as outlined in the policy above. Importantly, the only

---

[1] The Court notes that the only evidence or medical record provided by Bibbus to support this contention is a note—dated October 18, 2020—by a Dr. Narissa Whitelaw. It states only that "He has asthma and needs to be able to use his inhaler as needed for asthma symptoms." (Doc. No. 25-1 at 25). Not only is the note dated several months later, it is dated four days *after* he submitted a grievance. It also is silent as to Bibbus's ability to wear a mask. Finally, while the note itself is dated October 18th, there is no evidence that Bibbus ever presented it to SkyWest during his employment.

2

doctor's note that Bibbus provided as summary judgment evidence is dated October 18, 2020 (many months after this alleged meeting with Teague). (Doc. No. 25-1 at 25).

In July of 2020, Texas Governor, Gregg Abbott, issued an executive order instituting a statewide mask mandate. This executive order required people to wear a face covering in public, but exempted any person with a medical condition or disability that prevents wearing a face covering. Bibbus appears to have believed that this executive order, including its exception, superseded SkyWest's mask mandate. Accordingly, he unilaterally stopped wearing a mask.

In August of 2020, Bibbus received a positive Performance Review commending his quality of work, initiative, and good judgment. (Doc. No. 25, Ex. 16). On October 14, 2020, however, there was an incident between Bibbus and a United Airlines ("UA") supervisor regarding Bibbus' failure to wear a mask. The interaction was heated, and Plaintiff told the UA supervisor he was exempt from wearing a mask because of medical exemptions, and he told the UA supervisor, "maybe you should read the rules before trying to enforce them". (Doc. No. 19, Ex. 3; Ex. 1 at 143:25 - 146:17, 151:3-7, 152:11-154:21). The UA supervisor escalated this incident to UA's Director of Compliance and Safety, who reached out to SkyWest's Director of Safety, who also notified SkyWest's Vice President, and other members of SkyWest's upper management. (Doc. No. 19, Ex. 4 at 75:20-25). According to SkyWest, UA is SkyWest's biggest customer, and it requires SkyWest to follow its directives, thus, any such negative report from UA regarding a SkyWest employee is extremely significant. It was so significant, in fact, that SkyWest asked Teague (who was on his way home from work) to return to IAH and immediately address the incident with Plaintiff. (Doc. No 19, Ex. 5 at 132:2-8).

When Teague arrived at IAH, he spoke with Plaintiff. During the meeting, Teague explained that Plaintiff needed to wear a mask. (Doc. No. 19, Ex. 7 at 9; Ex. 5 at 133:1-5).

Teague also instructed Plaintiff that he was required to undergo a computer-based mask training session. Teague further explained to Plaintiff that if Plaintiff was unable to wear a mask, going forward, he needed to provide medical documentation in support of his request to SkyWest's HR department. Plaintiff responded by calling Teague a sheep and describing himself as a wolf that did not have to comply with wearing a mask. (Doc. No. 19, Ex. 5 at 133:1-10; Ex. 1 at 155:10-16; Ex. 7 at 9).

Later that day, Plaintiff submitted a discrimination complaint regarding the UA incident and the meeting with Teague. According to Plaintiff's complaint, Teague inquired about his medical condition. In response, he told Teague "I am not required to give you medical documentation because I am not asking for an accommodation." (Doc. No. 19-3 at 9). Plaintiff cited Governor Abbott's order in this complaint and stated that he had a medical condition. Plaintiff maintains that this complaint is protected activity for which he was retaliated against.

Two days after the UA incident and meeting with Teague, on October 16, 2020, Bibbus exchanged emails with senior manager of human resources, Kellie Dehais, in which he submitted a request for ADA accommodations. (Doc. No. 25-1 at 56). Dehais gave Bibbus three documents that he and his medical provider would have to complete in order to obtain a medical accommodation.

Then, October 20, 2020, Bibbus was placed on administrative leave. The notice of administrative leave states that: "Employee refuses to wear a mask. Employee states he has a medical condition which makes him exempt from wearing a mask. Employee need [sic] to contact Employee Relations for further instructions." (Doc. No. 19, Ex. 10). There is a dispute over what function administrative leave was intended to serve. Bibbus believes that it was corrective discipline for the mask-related incident on October 14th, meanwhile SkyWest

4

maintains that administrative leave is routinely used "when a safety conflict arises, in order to assess the employee's disability and engage in the interactive process without continuing to violate safety rules." (Doc. No. 19 at 13). Dehais testified to this in her deposition, although an email from Dehais to Bibbus in October of 2020 suggests otherwise. Dehais emailed Bibbus saying "You were placed on administrative leave due [to] insubordinate and unprofessional conduct with your supervisor and with a UA supervisor when questions arose regarding mask compliance . . . Your requested accommodation is a separate issue." (Doc. No 25-1 at 59). Thus, for the purpose of summary judgment where it must construe facts in a manner favorable to the non-movant, the Court will consider the administrative leave to be corrective discipline instituted in response to the October 14th incident.

Regardless of the reasons for placing Bibbus on administrative leave, a more significant incident occurred when SkyWest informed Bibbus that he would be placed on leave. Teague informed Bibbus that he was required to turn in his airport access and security badges for the duration of the leave. Bibbus refused to sign anything or turn in his badges. (Doc. No. 25, Ex. 7 at 3). Teague testified that refusing to return badges is a "serious issue" and is considered insubordination. (Doc. No. 19, Ex. 5 at 88–89). After Plaintiff repeatedly refused to turn in his badge, Teague contacted the airport operations and the Houston Police for assistance. (*Id.* at 95). The police arrived. Only after the police arrived did Bibbus return his badges to airport authorities. He was then escorted off the premises.[2] On November 9, 2020, Bibbus was terminated.

---

[2] Lead mechanic Carlos Bado was also present for the meeting between Bibbus and Teague. Bado wrote a summary of the meeting. In the summary, he wrote that during the meeting, Bibbus "told me that his medical condition is asthma but I have never seen him use an inhaler and he has never mentioned it before." He also wrote that Bibbus mentioned getting a voicemail from Dehais regarding his medical condition but did not want to call her because he did not trust her. (Doc. No. 25, Ex. 7 at 3).

Bibbus subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his disability. In this EEOC charge, Plaintiff acknowledges: "I asked HR for ADA accommodation for not wearing a mask on or about October 17, 2020, but I did not receive my doctors letter until after I was fired." (Doc. No. 25 at 25).

He then filed this lawsuit alleging disability discrimination under both the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA") for (1) disparate treatment, (2) failure to accommodate, and (3) retaliation.

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there

is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

SkyWest moves for summary judgment on all of Plaintiff's claims under the ADA and TCHRA for (1) disparate treatment, (2) failure to accommodate, and (3) retaliation.

#### a. Disparate Treatment

First, SkyWest argues that Plaintiff cannot raise a genuine issue of material fact supporting his cause of action for disparate treatment disability discrimination based upon his termination. "Because the ADA and TCHRA are very similar, Texas courts and [the Fifth Circuit] focus on federal precedent regarding the ADA in interpreting the TCHRA." *Willi v. Am. Airlines, Inc.*, 288 Fed. App'x. 126, 127 n. 2 (5th Cir.2008); *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 709 (S.D. Tex. 1014), *aff'd*, 642 Fed. Appx. 313 (5th Cir. 2016). To establish a prima facie case of disability discrimination under either statute, a plaintiff must show that: (1) he had a disability within the meaning of the ADA/TCHRA, (2) he was qualified and able to perform the essential functions of his job, and (3) he suffered an adverse employment action because of his disability. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). If Plaintiff makes such a showing, a presumption of discrimination arises, and SkyWest must articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *Id.* Once SkyWest articulates such a basis, the burden then shifts back to Plaintiff to produce evidence from which a

7

jury could conclude that SkyWest's stated reason for his termination was really pretext for unlawful discrimination. *See id.* at 245.

SkyWest argues that Plaintiff cannot meet his burden of raising a fact issue on his *prima facie* case of discrimination, and in the alternative, SkyWest has articulated a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff cannot produce evidence that the reason is pretextual.

On the first element, SkyWest contends that Plaintiff does not have a "disability" under the ADA or TCHRA. Under the ADA and the TCHRA, "disability" means: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2); TEX. LAB. CODE ANN. § 21.002(6). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C.A. §12102(3).

The Court disagrees with SkyWest's conclusion and finds that there is a fact issue as to whether Plaintiff has a disability under the ADA. Plaintiff has testified that his asthma flared up and he had trouble breathing when doing strenuous activity. He further testified that on his worst day at SkyWest, he would have multiple breathing episodes per day. (Doc. No. 25, Ex. 19 at 74-75). Thus, Plaintiff has raised a fact issue as to whether his asthma "substantially limits one or more of [his] major live activities," and consequently, as to whether he has a disability under the ADA/TCHRA.

On the second element, SkyWest contends that Plaintiff was not "qualified" to perform the essential functions of his job because he could not comply with the valid safety requirement

8

for his position—wearing a mask. The U.S. Equal Employment Opportunity Commission ("EEOC") has set out that job-related requirements may include meeting health or safety requirements. (Doc. No. 19, Ex. 15 at 5). The EEOC further clarifies that:

> If an applicant or employee cannot meet a specific qualification standard because of a disability, the ADA requires that the employer demonstrate the importance of the standard by showing that it is "job-related and consistent with business necessity." 42 U.S.C. §§ 12112(b)(6), 12113(a) (2000); 29 C.F.R. §§ 1630.10 and 1630.15(b)(1) (2007). This requirement ensures that the qualification standard is a legitimate measure of an individual's ability to perform an essential function of the specific position the individual holds or desires. If an employer cannot show that a particular standard is "job-related and consistent with business necessity," the employer cannot use the standard to take an adverse action against an individual with a disability.

(*Id.*).

SkyWest argues that mask wearing rules were valid safety measures in accordance with the Center for Disease Control's guidance, aimed at reducing the spread of the COVID-19 virus at time when there was no vaccine, no approved treatment, and no cure. Plaintiff sought to be exempt from this requirement, which rendered him not a qualified individual for purposes of the ADA and TCHRA. Based upon the fact that Plaintiff rejected SkyWest's safety mandate, which was job-related and consistent with business necessity at the time, SkyWest contends that Plaintiff cannot raise a fact issue as to the second element of his disparate treatment claim.

In response, Plaintiff maintains that he was qualified to perform the essential job functions of a Mechanic Level III with or without the accommodation, citing his favorable performance reviews. Plaintiff also argues that SkyWest's mask policy carved out an exception for him. (*See* Doc. No. 25-9 at 6) (exception for "employees who have documented health conditions incompatible with wearing of masks or face coverings). The Court finds that this evidence is sufficient to raise a fact issue as to whether Plaintiff was qualified.

9

Finding that Plaintiff has, for the purposes of summary judgment, established a *prima facie* case for disability discrimination on the first two elements, the burden shifts to SkyWest to offer a legitimate, nondiscriminatory reason for taking an adverse employment action against Plaintiff.

SkyWest argues that it is entitled to summary judgment because Plaintiff was terminated for insubordination, not his asthma or failure to wear a mask. Plaintiff's disrespectful and noncompliant behavior, according to SkyWest, is a legitimate, nondiscriminatory reason for his termination. "The ADA does not create an impenetrable barrier around a disabled employee, preventing an employer from taking any employment actions vis-à-vis the employee." *Green v. Medco Health Sols. of Tex.*, LLC, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Tex., L.L.C.*, 560 Fed. Appx. 398 (5th Cir. 2014). "An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim." *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998).

SkyWest argues that Plaintiff's insubordination and unprofessional behavior was the cause of his termination, due to both his October 14th incident with the UA supervisor and his October 20th refusal to turn in his badges to Teague. Given that UA is a major SkyWest business partner, SkyWest argues that receiving such a negative report from UA regarding its employee hurts SkyWest's reputation. (Doc. No. 19, Ex. 4 at 75:7-16). Additionally, SkyWest notes that on October 20th, Plaintiff's conduct was so combative that it required Teague to summon airport authorities to step in and eventually escort Plaintiff from the premises to protect the safety of SkyWest's employees and the operation. (Doc. No. 19, Ex. 1 at 191:5 – 192:1; Ex. 5 at 142:6-19; 95:22 – 96:1; Ex. 4 at 74:10-15).

Plaintiff admits he was engaged in a spirited encounter with a UA supervisor, which was reported to SkyWest's senior management. (Doc. No. 19, Ex. 1 at 152:12-24, 154:14-21, 249:19-20, 255:18-22, 257:15 – 258:9). Plaintiff also admits that he refused to follow his supervisor's directive on October 20, 2020, when Teague asked for his work badges. (Doc. No. 19, Ex. 1 at 189:19 – 190:3, Ex. 11 at No. 42-43). Accordingly, SkyWest maintains that insubordination and unprofessional conduct was a legitimate, nondiscriminatory reason for terminating Plaintiff.

Finding that SkyWest has offered a legitimate, nondiscriminatory explanation for terminating Plaintiff, the burden shifts to Plaintiff to show that SkyWest's reasons were pretext for discrimination. At the summary judgment stage, this means "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "In conducting a pretext analysis, the court does not 'engage in second-guessing of an employer's business decisions.'" *Roberson-King v. State of La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018). In addition, an employee's subjective belief that he has suffered discrimination is not sufficient to establish pretext. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (a "subjective belief of discrimination ... cannot be the basis of judicial relief").

Plaintiff argues that there is evidence of pretext because SkyWest has changed its justification for placing him on administrative leave. At the time, SkyWest's HR personnel Dehais told him that he was placed on administrative leave for failure to wear a mask. During this litigation, however, SkyWest contends that administrative leave is typical while evaluating an employee's medical accommodation request.

It is important to note, however, that the administrative leave period is not the pivotal issue; it is the termination. The Court finds that Plaintiff has failed raised a fact issue that

SkyWest's reason for terminating him—insubordination—is pretextual. Put simply, He has not offered any evidence that discrimination based on his asthma lay at the heart of SkyWest's decision to terminate him. *See Price*, 283 F.3d at 720. While SkyWest's unexplained change in reasoning as to the administrative leave could prove troublesome to many, this is not enough to raise a fact issue on pretext as to termination. This is because Plaintiff's reaction to being placed on leave, regardless of whether he agreed with the decision, is evidence of unprofessional conduct unrelated to his asthma. He does not deny that he refused to turn in his security badges and that he had to be escorted off the premises by Houston police on October 20th.

Even setting this October 20th incident aside, there is undisputed evidence that Plaintiff behaved unprofessionally before he ever requested an accommodation or submitted any medical documentation of his condition. As Plaintiff admits, he had a heated exchange with a UA supervisor on October 14th. When Plaintiff was asked about his failure to wear a mask, he told the supervisor "maybe you should read the rules before trying to enforce them." (Doc. No. 19-3 at 11). Immediately after this incident, Plaintiff had a meeting with Teague in which Plaintiff told Teague that "[Teague]'s [a] sheep and that [Plaintiff]'s the wolf and that he's not going to follow issues [sic] just because somebody else says so." (Doc. No. 25-11 at 35). Plaintiff does not dispute that he said this. Moreover, Plaintiff's own account of this meeting shows that Teague inquired about what Plaintiff's medical condition was, but Plaintiff refused to give any information. (Doc. No. 19-3 at 11). Therefore, there is undisputed evidence of Plaintiff's insubordinate conduct before submitting any information regarding his alleged disability. This conduct, including the heated incident with the UA supervisor, Plaintiff's comment about being a wolf who would not follow orders just because someone says so, and Plaintiff's refusal to divulge any information regarding his medical condition (while accusing SkyWest of

12

discriminating against him *because* of that medical condition) fail to raise a fact issue that SkyWest's proffered explanation of insubordination is pretextual.

In short, Plaintiff has failed to show a fact issue that the reason given for his termination was pretextual and that SkyWest discriminated against him based on his disability, considering that the summary judgment evidence shows he repeatedly and antagonistically refused to comply with the company's mask policy *before* he asked HR for a medical exemption or provided SkyWest with any documentation of his disability. For these reasons, the Court GRANTS SkyWest's motion for summary judgment on this issue.

### b. Failure to Accommodate

SkyWest also argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim. It primarily argues that Plaintiff failed to exhaust his administrative remedies with regard to this claim and that Plaintiff was responsible for the breakdown of the iterative process for receiving an accommodation.

Under the ADA and TCHRA, a plaintiff must exhaust all administrative remedies as a prerequisite to filing suit. *See* Tex. Lab. Code Ann. §§ 21.201–.202; 42 U.S.C. § 2000e-5(e)-(f). Plaintiff's EEOC Charge does not raise a failure to accommodate claim. (Doc. No. 19, Ex. 14). Plaintiff's Charge focused only on Plaintiff's termination and alleges only a disparate treatment claim, which is distinct from a failure-to-accommodate claim. *Id.*; *Windhauser v. Bd. of Supervisors*, 360 F. App'x 562, 565 (5th Cir. 2010) ("A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment."); *Hamar*, 211 F. App'x at 310 ("The two relevant claims, failure to accommodate and disparate treatment, represent distinct categories of disability discrimination under the ADA." (citing 42 U.S.C. §§ 12112(a), 12112(b)(5)(A)).

SkyWest argues that the scope of Plaintiff's Charge is "too narrow to have exhausted a claim for failure to accommodate," and "the EEOC could not reasonably have been expected to investigate the entirely distinct failure-to-accommodate claim." *Hamar*, 211 F. App'x at 310; *Belmear v. Mary Kay Inc.*, 2000 WL 127282 (N.D. Tex. Feb. 3, 2000). In response, Plaintiff cites to the following sentence in his EEOC charge "I asked HR for ADA accommodation for not wearing a mask on or about October 17, 2020, but I did not receive my doctors letter until after I was fired." (Doc. No. 25 at 25). The Court finds that this sentence was sufficient to preserve Plaintiff's failure-to-accommodate claim.

As for the merits of Plaintiff's claim, SkyWest argues that Plaintiff's behavior was responsible for the breakdown of the informal, interactive process for obtaining an accommodation and that Plaintiff cannot establish that he satisfied the requirements for requesting an accommodation.

The ADA and the Texas Labor Code both require that a plaintiff show: (1) he is a "qualified individual with a disability"; (2) the disability and its consequential limitations were "known" by SkyWest; and (3) SkyWest failed to make "reasonable accommodations" for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Courts have held that an employer cannot be found to have violated the ADA when responsibility for the breakdown of the "informal, interactive process" is traceable to the employee and not the employer. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

SkyWest contends that Plaintiff cannot satisfy above elements of his claim, in part because Plaintiff never submitted documentation of his disability to SkyWest and because

Plaintiff "deprived SkyWest of the opportunity to [offer] any other accommodation when Plaintiff engaged in insubordinate conduct that led to his termination." (Doc. No. 19 at 25).

Plaintiff disagrees, arguing that there is a fact issue because "On October 14, 2020, Kellie Dehais acknowledged receipt of his request for an accommodation which included a complaint that his requests had been ignored. SkyWest failed to engage in the interactive process and never offered Plaintiff a reasonable accommodation." (Doc. No. 25 at 25). He further argues that his being placed on administrative leave and his later termination are "prima facie evidence of Bibbus complaint of discrimination." (*Id.*). He does not respond to SkyWest's points regarding his conduct on October 20th, nor does he attach evidence that he provided medical documentation to SkyWest prior to his termination.

Upon examining the law and the competent summary judgment evidence, the Court finds that Plaintiff failed to raise a fact issue in support of his prima facie failure to accommodate claim.

Here, Plaintiff submitted a grievance to SkyWest on October 14, 2020. In this grievance, Plaintiff admits that he did not provide SkyWest information regarding his alleged medical condition. He wrote that he believed his supervisor was "not allowed to ask [for medical information] due to [an] equal opportunity violation," and he recalls telling his supervisor, "under the EEOC I am not required to give you medical documentation **because I am not asking for an accommodation.**" (Doc. No. 19, Ex. 3) (emphasis added). Thus, as of October 14, there is no evidence that SkyWest knew of a documented medical condition or had any notice that Plaintiff was seeking an accommodation for his alleged disability. To the contrary, SkyWest was told that he was *not* seeking an accommodation and would *not* be providing any more information regarding his alleged disability.

15

Several days later, Plaintiff did seek an accommodation with HR. At this point, HR Manager Kellie Dehais contacted Plaintiff and asked Plaintiff to complete several forms and submit certain medical documentation necessary for SkyWest to process his request for a medical accommodation. (Doc. No. 19, Ex. 4 at 64:21 – 65:6, 73:4-11, 74:19-21, 106:23 – 107:5, 109:1-24. 124:21-25, 144:12-20; Ex. 9; Ex. 18). Plaintiff admits that at this time he did not have the medical documentation. For example, even in Plaintiff's EEOC charge, Plaintiff acknowledges that he did not have medical documentation of his asthma until after he was terminated and, consequently, had not presented it to SkyWest.

Thus, Plaintiff cannot raise a fact issue on the three *prima facie* elements of his failure to accommodate claim, and SkyWest is entitled to summary judgment on this issue.

### c. Retaliation

Finally, SkyWest moves for summary judgment on Plaintiff's retaliation claim. A claim of unlawful retaliation under the ADA and TCHRA, requires a plaintiff to make a prima facie case by showing that: (1) he engaged in an activity protected by the ADA/TCHRA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999); *Tabatchnik v. Continental Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. Jan. 30, 2008); *Texas Dep"t of Transp. v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021). If the plaintiff succeeds, the employer must present a legitimate, non-discriminatory reason for the retaliatory adverse employment action. *Seaman*, 179 F.3d at 301. If the employer succeeds, the plaintiff must present sufficient evidence showing that the employer's proffered reason is a pretext for discrimination and that but for the protected activity, the adverse action would not have occurred. *Id.*

SkyWest argues, and the Court agrees, that Plaintiff cannot show that he engaged in protected activity. Plaintiff seems to base his retaliation claim on his grievance that he submitted to SkyWest on October 14, 2020, wherein he describes his interaction with the UA supervisor as "harassment", "abuse of power," creating a "hostile work environment" and "issuing threats." (Doc. No. 19, Ex. 3 at SWA 764). Plaintiff's October 14th grievance also complains about his supervisors asking him for medical documentation, and once again, states that he refused because he was "not asking for an accommodation." *Id.* He does not mention any specific disability in this complaint; rather, he generally cites to his "medical conditions" as his reason for not wearing a mask. Thus, while Plaintiff's grievance complains about alleged mistreatment toward him for failure to wear a mask, the grievance does not tie that mistreatment to his alleged disability. Thus, this grievance is not evidence that Plaintiff alerted SkyWest of his belief that "disability discrimination was at issue" or in other words, that the grievance was intended to oppose a practice of disability discrimination. *See Tex. Dep't of State Health Services v. Resendiz*, 642 S.W.3d 163, 182 (Tex. App.—El Paso 2021, no pet.).

Moreover, as in the analysis above, Plaintiff has not raised an issue of material fact showing that there is a casual connection between either this grievance or his later accommodation request, and any adverse employment action he suffered. Finding no genuine issue of material fact in support of Plaintiff's *prima facie* retaliation claim, the Court hereby grants SkyWest's summary judgment on this claim as well.[3]

---

[3] The Court would similarly grant summary judgment under the burden-shifting *McDonnell Douglas* framework because Plaintiff has provided no evidence that SkyWest's proffered explanation for his termination—insubordination—is pretextual. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998) (applying the *McDonnell Douglas* burden-shifting framework for claims of unlawful retaliation under the ADA).

## IV.     Conclusion

Having considered the motions, summary judgment evidence, and applicable law, the Court hereby GRANTS SkyWest's motion for summary judgment (Doc. No. 19). Plaintiff failed to raise a fact issue on his disability discrimination claims for (1) disparate treatment, (2) failure to accommodate, and (3) retaliation. Accordingly, this matter is hereby dismissed with prejudice.

Signed at Houston, Texas, this ___ day of May, 2024.

Andrew S. Hanen
United States District Judge